1

2

3

4

5

6

7

8

9

10                    UNITED STATES DISTRICT COURT

11            FOR THE CENTRAL DISTRICT OF CALIFORNIA

12

13   Hagop Cholakian,                )        ED CV07-1285- RT
                                      )        ED CR99-0044-RT-02
14         Movant/Defendant,          )
                                      )        ORDER 1) DENYING MOVANT
15              v.                    )        HAGOP CHOLAKIAN'S REQUEST
                                      )        FOR AN EVIDENTIARY
16   United States of America,        )        HEARING, AND 2) DENYING
                                      )        MOVANT'S MOTION TO
17         Respondent/Plaintiff.      )        VACATE, SET ASIDE, OR
     _____)        CORRECT SENTENCE PURSUANT
18                                             TO 28 U.S.C. § 2255

19

20         The court, Judge Robert J. Timlin, has read and considered movant/defendant Hagop

21   Cholakian's ("Cholakian") motion to vacate, set aside, or correct his sentence pursuant to 28

22   U.S.C. § 2255 ("Section 2255"), respondent/plaintiff United States' ("United States" or

23   "government") opposition to Cholakian's Section 2255 motion, including exhibits thereto, and

24   Cholakian's reply.  The court has also read and considered the transcripts of various proceedings

25   in the criminal action including the change of plea proceedings and sentencing hearings, filed by

26   the government.  Based on such consideration, the court concludes as follows:

27                                     **I.**

28                                **BACKGROUND**

On November 2, 1999, a federal grand jury indicted Cholakian and co-defendant Vanik Oganessyan ("Oganessyan") alleging the following two counts: 1) conspiracy to distribute more than five kilograms of cocaine in violation of 21 U.S.C. § 846 ("count one"), and 2) possession with intent to distribute more than five kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1) ("count two").  On October 5, 2001, Cholakian pled guilty to count one pursuant to a plea agreement with the government.  As part of the plea agreement, the parties agreed that Cholakian was eligible under the applicable Sentencing Guidelines for a two-level minor role adjustment, that Cholakian met three of the five requirements for "safety valve" relief under Section 5C1.2 of the Sentencing Guidelines ("Section 5C1.2"), and that Cholakian "reserve[d] the right to argue that additional . . . adjustments and departures are appropriate."

Under the terms of the plea agreement, Cholakian made several promises to be truthful: First, he agreed to "be truthful at all times with Pretrial Services, the U.S. Probation Office and the Court."  Second, he agreed to "cooperate fully with the USAO [and] the DEA. . . This cooperation requires defendant to . . . [r]espond truthfully and completely to all questions that may be put to defendant, whether in interviews, before a grand jury, or at any trial or other court proceeding."   The plea agreement also contained the following provision in bold type: "Defendant also agrees and acknowledges that by signing this agreement, he is acknowledging that he committed the acts described in the 'Factual Basis.'"

The stipulated factual basis contained in the plea agreement was as follows;

> Beginning on a date prior to October 4, 1999, and continuing to on or about October 18, 1999, in San Bernardino County, within the Central District of California and elsewhere, defendant and Vanik Oganessyan and others, including Haroutyoun Babajanian, agreed with each other to knowingly and intentionally distribute more than five kilograms of a mixture or substance containing a detectible amount of cocaine.  Vanik Oganessyan acted as a salesman or broker, and would negotiate wiht prospective buyers.
> On October 18, 1999, pursuant to his agreement with Vanik Oganessyan, defendant drove a pick-up truck, which he knew contained six kilograms of cocaine supplied by Haroutyoun Babajanian, to a McDonald's parking lot in Ontario, California.  Pursuant to his agreement with Vanik Oganessyan, when defendant exited the truck, he left it unlocked.  He held on to his keys, and then served as a look-out during the transaction, in which Vanik Oganessyan informed an undercover officer that he could take the cocaine from the pick-up.

Cholakian signed the plea agreement underneath the following statement: "I have

2

1   carefully read and discussed every part of this agreement with my attorney.  I understand the

2   terms of the agreement, and I voluntarily agree to those terms.  My attorney has advised me of

3   my rights, of possible defenses, of the Sentencing Guidelines provisions, and of the consequences

4   of entering into the agreement.  No promises or inducements have been made to me other than

5   those contained in this agreement.  No one has threatened or forced me in any way to enter into

6   this agreement.  Finally, I am satisfied with the representation of my attorney in this matter."

7   The agreement stated in bold-faced capital letters: "I swear under penalty of perjury that the facts

8   in the 'factual basis' paragraph above are true."

9          Finally, the plea agreement contained a limited mutual waiver of appeal and collateral

10  attack. Cholakian agreed not to "bring a post-conviction collateral attack, except a post-

11  conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of

12  newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing

13  Guidelines, sentencing statutes, or statutes of conviction."

14         At Cholakian's plea colloquy on October 5, 2001 under Rule 11 of the Federal Rules of

15  Criminal Procedure ("Rule 11"), the Court asked Cholakian a number of questions to confirm

16  that Cholakian's proposed plea of guilty to count one was knowing and voluntary, and that he

17  agreed to the factual basis contained in the plea agreement.  First, the Court inquired whether

18  Cholakian understood the nature of the charges and the provisions of the plea agreement, and

19  whether he was satisfied with his counsel's representation of him.  Cholakian stated that he had

20  discussed the charges in the indictment with his counsel, that he understood the nature of the

21  charges, and that he was satisfied with the performance of his counsel.  Cholakian stated he had

22  read the plea agreement, discussed it with his counsel, and that he had no questions concerning

23  the agreement.

24         This court also inquired whether Cholakian understood the nature of safety valve relief

25  available under Section 5C1.2, and what the consequences were if the court found he was not

26  eligible for such relief.  Cholakian stated that he understood the mandatory minimum custody

27  period was ten years, and that he knew that mandatory minimum sentence would be imposed if

28  he failed to meet the safety valve criteria.  He also acknowledged that he would not be allowed to

3

1    withdraw his guilty plea if the sentence imposed was not what he may have expected or desired.

2         Next, the court read count one to Cholakian and then asked Cholakian to tell the court, in

3    his own words, what he did which caused him to come to court to plead guilty to count one.

4    Cholakian stated that he went with Oganessyan to deliver cocaine, that he had an agreement with

5    Oganessyan to deliver cocaine, and that he knew that the cocaine was being transported pursuant

6    to the agreement for the purpose of distributing that cocaine.  Finally, at the request of the court,

7    the government then informed the court and Cholakian of what it believed it could prove beyond

8    a reasonable doubt if the case went to trial. The Assistant United States Attorney ("AUSA")  then

9    reiterated the facts exactly as stated in the factual basis of the plea agreement, including that

10   Cholakian drove a pickup truck which he knew contained 6 kilograms of cocaine to a

11   McDonald's parking lot in Ontario, California, pursuant to his agreement with Oganessyan; that,

12   when he arrived at the parking lot, Cholakian exited the truck and left it unlocked; and that he

13   then held on to the keys and served as a lookout for the transaction. In response to the court's

14   questions, Cholakian stated that he agreed with the AUSA's representation of what the

15   government could prove.

16        The court accepted Cholakian's plea of guilty to count one finding that Cholakian was

17   knowingly and voluntarily pleading guilty.  This court also found that there was a factual basis

18   for the guilty plea based on Cholakian's statements to the court and the AUSA's representations.

19   The court further commented that Cholakian "ha[d] been totally engaged in these proceedings.

20   He has listened very carefully to the Court and his answers have been responsive.  He has at

21   times conferred with his counsel."

22        Shortly after Cholakian pled guilty, on October 12, 2001, Cholakian and his counsel met

23   with the government law enforcement representatives for a proffer session pursuant to the plea

24   agreement.  Although Cholakian did admit that he was involved in the cocaine transaction that

25   occurred on Ocober 14, 1999, his statements at the proffer session contradicted part of the factual

26   basis of his plea agreement.  Cholakian stated that he drove his white Mercedes-Benz to the

27   McDonald's, not the truck containing the cocaine as he had stated in his plea agreement and at

28   the Rule 11 colloquy.  Cholakian's attorney stated during the proffer session that he had advised

1  Cholakian to sign the plea agreement despite the factual inaccuracy, because the fact was

2  immaterial.  Cholakian also contradicted himself during the course of the proffer session, at first

3  stating that he first learned of the drug deal when he came back from a vacation in the Bahamas

4  on October 11, 1999, but later admitting that he knew of the drug deal before he left for the

5  Bahamas.  He also indicated during the proffer session that he had financed the cocaine

6  transaction with $15,000.  The proffer session ended quickly, because the government concluded

7  that Cholakian was not being entirely truthful.

8       In January 2002, Cholakian was interviewed by a United States Probation Officer in

9  preparation for a Presentence Report for sentencing.  At that time, he told the probation officer

10 that he would rely upon the plea agreement's statement of facts to describe his involvement in the

11 offense.  He provided no other factual information to the Probation Officer.

12      On November 15, 2002, the government filed its sentencing position, in which it stated

13 that, in its opinion, Cholakian met the criteria for safety valve consideration under Section 5C1.2.

14      On December 3, 2002, Cholakian filed his sentencing position and attached two separate

15 statements by him:  a declaration to "provide . . . corrections and clarifications" to the PSR and a

16 "safety valve proffer" by Cholakian.  Both these documents contained statements which

17 contradicted the factual basis in Cholakian's plea agreement and statements he made during his

18 proffer session.  First, in his declaration, Cholakian stated that he "was not . . . and never has

19 been [Oganessyan's] partner in drug dealing."  He also denied knowing of the cocaine transaction

20 during his vacation to the Bahamas, a statement contradicted by at least one statement he made at

21 his proffer session.  Further, in his declaration, he denied serving as a look-out "even though [he]

22 may have appeared to the surveilling agents as doing so," a statement which flatly contradicted

23 what was contained in the factual basis of the plea agreement.  Finally, Cholakian stated in his

24 declaration that he did not know that there were 6 kilograms of cocaine in the bag in the truck,

25 which also contradicted the plea agreement's factual basis.

26      In the document that Cholakian referred to as a "safety valve proffer" in his sentencing

27 position paper, he again made inconsistent statements.  He stated that he knew that the truck

28 contained 6 kilograms of cocaine supplied by a third party, which corresponds with what he

5

1    stated in the factual basis in the plea agreement but is contrary to the statement made in his

2    sentencing position filed simultaneously with this "proffer."  Also, the "safety valve proffer"

3    contained no mention of Cholakian being a look-out and instead simply states that "[a]s

4    Oganessyan conducted the cocaine transaction . . . in the restaurant's parking lot, Cholakian was

5    waiting at the restaurant."

6          Based on Cholakian's sentencing position, on December 10, 2002, the government filed a

7    response withdrawing its support for Cholakian's entitlement to safety valve relief under Section

8    5C1.2.  The government stated that it had been advised, prior to filing its initial sentencing

9    position on November 15, 2002, that Cholakian "had submitted to a polygraph examination [after

10   the proffer session] and appeared to truthfully provide information and evidence regarding his

11   offense conduct."   However, because the declaration and safety valve proffer provided by

12   Cholakian with his sentencing position contradicted his previous statements, the government

13   withdrew its prior position that Cholakian was eligible for safety valve relief as he "has not

14   truthfully provided all information and evidence as required" under Section 5C1.2.

15         On December 17, 2002, this court held a sentencing hearing.  At that hearing, Cholakian

16   testified that he did not know about the cocaine transaction before he went to the Bahamas (and

17   that he had not stated otherwise at his proffer session); that he did not act as a look-out for

18   Oganessyan during the cocaine transaction and that he had no agreement to do so; that he did not

19   know how much cocaine was in the bag until after the arrest on October 18, 1999; and that he

20   was not a partner to Oganessyan in this cocaine transaction.  Cholakian's explanation for the

21   discrepancies between this recitation of events and that given in the factual basis of the plea

22   agreement and his plea colloquy was that he did not have sufficient time to review the plea

23   agreement before he signed it and he had intentionally misstated the facts because his attorney

24   had advised him that the factual differences were "immaterial" to his plea.  He subsequently

25   admitted that he knew that he had signed the plea agreement under penalty of perjury, that he

26   understood what that meant, and that he had read the plea agreement and factual basis before

27   signing it.

28         To confirm what Cholakian had said under oath during his change of plea colloquy, the

court had the court reporter read back her notes of the change of plea proceeding.  After listening to the read-back, Cholakian again stated that he had lied during the change of plea proceeding.

At the conclusion of the sentencing hearing, this court found that Cholakian had provided conflicting information but recommended that the government give him one more chance to proffer, for the purpose of obtaining safety valve relief.  The government agreed, the sentencing hearing was continued, and another proffer session with government representatives was set up.

Cholakian appeared for a second proffer session on January 14, 2003.  At that time, according to Special Drug Enforcement Agent Derocher's testimony at the second continued sentencing hearing concerning this proffer session,  Cholakian again made statements that conflicted with the factual basis in his plea agreement, to the effect that he did not know anything about a cocaine transaction during his vacation to the Bahamas, and that he found out about the drug deal right before he drove the truck to the McDonald's parking lot.   The government representatives terminated the proffer session because they again felt Cholakian was not providing truthful and complete information.

At the continued sentencing hearing on August 11-13, 2003, Cholakian's counsel asked permission to "complete that proffer session."  This court permitted him to do so, and Cholakian and his counsel conferred before his counsel made the further proffer.  Cholakian's counsel then provided another version of events that also differed from the factual basis in the plea agreement.

Cholakian himself then testified at the continued sentencing hearing and again provided conflicting information.  At that time, he testified that he may have received calls from Oganessyan while he was in the Bahamas, but he could not remember. However, for the first time, he admitted that he made phone calls to Oganessyan while he was in the Bahamas and spoke with him.  Further, Cholakian provided confusing and contradictory explanations as to the $15,000 he gave Oganessyan, suggesting that it was for purchase of a car, even though he had indicated at the original proffer session that it was to finance the drug transaction.

The court sentenced Cholakian to the mandatory minimum term of 120 months in prison, after concluding that he was ineligible for safety valve relief under Section 5C1.2 because he had provided incomplete and untruthful information to the government.  More specifically, the court

found that Cholakian was untruthful at his proffer sessions on October 12, 2001 and January 14, 2003, when he made the following statements: 1) he drove a white Mercedes Benz car to the site of the cocaine transaction and did not drive the truck with the cocaine in it to the site; 2) he was first aware of the proposed cocaine transaction after his vacation to the Bahamas; 3) he was not aware of the possible drug transaction until October 18, 1999; and 4) he stated in his January 14, 2003 proffer session that he gave $15,000 to Oganessyan for a car sale, when in his October 12, 2001 proffer session he stated that he gave Oganessyan that money for the purchase of cocaine. This court also found that Cholakian had failed to provide the government with complete information about the offense in count one to which he pled guilty.

The court made further findings concerning Cholakian's truthfulness, in denying him an adjustment for acceptance of responsibility.  The court stated that Cholakian "really hasn't been truthful regarding relevant material matters, and the November 29, 2002 declaration and his testimony at the sentencing hearings have been to minimize his role in the offense."

On August 19, 2003, Cholakian filed an appeal to the United States Court of Appeals for the Ninth Circuit.  He argued that this court erred in denying safety valve relief and in refusing to give him an adjustment for acceptance of responsibility.  On November 28, 2005, the Ninth Circuit affirmed Cholakian's conviction, finding that this court did not err in denying safety valve relief and finding his other contention to be moot.

Cholakian filed the instant Section 2255 motion on March 7, 2007, alleging the following grounds for relief: 1) that his plea was not made voluntarily and with full understanding of the consequences of his guilty plea; 2) that he was denied effective assistance of counsel in the following instances: a) his counsel advised him to sign the plea agreement without sufficient time for him to review and consider it; b) his counsel advised him to sign the plea agreement despite factual inaccuracies in the plea agreement because those inaccuracies were immaterial; c) his counsel filed a sentencing position and declaration that created further factual inconsistencies and caused the government to withdraw its initial sentencing position in favor of granting Cholakian the safety valve relief; d) after filing the sentencing position paper, his counsel failed to realize the error he had made and did not attempt to rectify that error with the United States Attorney's

1    Office; e) his counsel put him on the witness stand on three separate occasions during the

2    sentencing proceeding; f) his counsel continued in his representation of Cholakian despite a

3    conflict of interest; and g) his counsel was intoxicated on August 13, 2003, at the time of

4    Cholakian's sentencing.

5                                                  **II.**

6                                            **ANALYSIS**

7            **A.  Legal Standard For a 28 U.S.C. § 2255 Motion**

8            Under Section 2255, a federal prisoner may attack his sentence on the ground that "[it]

9    was imposed in violation of the Constitution or laws of the United States, . . . or that the court

10   was without jurisdiction to impose such a sentence."  28 U.S.C. § 2255.  A court must grant an

11   evidentiary hearing on the Section 2255 motion unless "the motion and the files and records of

12   the case conclusively show that the prisoner is entitled to no relief."  Id.; United States v.

13   Burrows, 872 F.2d 915, 917 (9th Cir. 1989).  Section 2255 requires a movant to set forth specific

14   allegations that, if true, would entitle him to relief.  United States v. McMullen, 98 F.3d 1155,

15   1159 (9th Cir. 1996).  A court may deny a hearing "only if the movant's allegations, viewed

16   against the record, either do not state a claim for relief or are so palpably incredible or patently

17   frivolous as to warrant summary dismissal."  Burrows, 872 F.2d at 917.

18           **B.        Cholakian's Guilty Plea Was Knowing and Voluntary**

19           Cholakian asserts that his guilty plea to count one was unknowing and involuntary, based

20   on his counsel's incorrect legal advice concerning the factual basis to support the guilty plea, the

21   insufficient time he had to review the plea agreement and the alleged threats by the United States

22   Attorney's Office to indict certain members of his family if he did not plead guilty immediately.

23   For a "knowing and voluntary" plea, a defendant at the time of pleading guilty must have a "full

24   understanding of what the plea connotes and of its consequences."  Boykin v. Alabama, 395 U.S.

25   at 244.  "The purpose of the 'knowing and voluntary' inquiry . . . is to determine whether the

26   defendant actually does understand the significance and consequences of a particular decision

27   and whether the decision is uncoerced."  Godinez v. Moran, 509 U.S. 389, 401 n.12 (1993).

28           Cholakian's contention is completely undercut by his own statements at the plea colloquy

                                                     9

during the Rule 11 change of plea proceeding.  Statements made by the defendant during the guilty plea colloquy carry a strong presumption of veracity in subsequent proceedings.  United States v. Mims, 928 F.2d 310, 313 (9th Cir. 1991) (attaching substantial weight to contemporaneous on-the-record statements in assessing the voluntariness of a plea); United States v. Anderson, 993 F.2d 1435, 1438 (9th Cir. 1993) ("statements made by a criminal defendant contemporaneously with his plea should be accorded great weight because 'solemn declarations made in open court carry a strong presumption of veracity").  Here, the record of Cholakian's change of plea proceedings reveals that his plea was knowing and voluntary.  Cholakian was advised by the court as to the potential mandatory minimum sentence of imprisonment, the terms of his plea agreement and his rights and obligations under that agreement.  He was specifically questioned by the court about his understanding of the sentence that he faced and the terms of the plea agreement, and he answered with correct information and gave no indication that he was confused as to the terms of the agreement and the consequences of his plea of guilty to Count One.  Further, the court questioned him regarding the factual basis of his proposed guilty plea and he raised no issues concerning the truthfulness and completeness of it as stated in the plea agreement and reiterated by him under oath at the change of plea proceeding.  Further, he agreed to the factual basis as stated by the AUSA at the change of plea proceeding, which statement was basically the same as recited in the plea agreement.  He answered in the negative when asked whether he was pleading guilty to count one because of threats or coercion.

Finally, Cholakian stated at the proceeding that he was entering his guilty plea knowingly and voluntarily.  A declaration by a defendant concerning the voluntariness of the plea and his reaffirming the provisions of the plea agreement in open court under oath carries ". . . a strong presumption of verity."  United States v. Grewal, 825 F.2d 220, 223 (9th Cir. 1987).

During the extensive sentencing proceedings in this case, this court already had an opportunity to determine the credibility of Cholakian's statements after the change of plea proceedings versus the believability of statements he made during the change of plea colloquy.  It finds his statements at the change of plea colloquy to be more credible than his later statements in

1   this motion, subsequent proffer sessions and sentencing hearings regarding his plea of guilty

2   being knowing and voluntary.

3          Based on the court's observation of and dialogue with Cholakian at the change of plea

4   proceeding, this court concludes that Cholakian has failed to show that his guilty plea was

5   unknowing or involuntary.  Absent such showing, the court will deny his motion insofar as it is

6   based on that contention.

7   **C.     Cholakian's Ineffective Assistance of Trial Counsel Claims Are Without Merit**

8

9          Cholakian asserts a number of ineffective assistance of trial counsel claims, which will be

10  addressed in turn.  To prevail on a claim of ineffective assistance of counsel, the movant bears the

11  burden of showing that, at the time of counsel's conduct, (1) counsel's performance was

12  deficient, defined as falling below an objective standard of reasonableness, and (2) that the

13  deficient performance prejudiced the defendant.  Strickland v. Washington, 466 U.S. 668, 104

14  S.Ct. 2052, 2064 (1984); see also United States v. Feldman, 853 F.2d 648, 665 (9th Cir. 1988).

15  With regard to the first prong of the two-part test, when evaluating an ineffective assistance of

16  counsel claim, the court "must indulge a strong presumption that counsel's conduct falls within

17  the wide range of reasonable professional assistance."  Strickland, 104 S.Ct. at 2065.   With

18  regard to the second prong, prejudice is defined as a reasonable probability, sufficient to

19  undermine confidence in the outcome of the proceeding that, but for counsel's errors, there would

20  have been a different result.  Id. at 2068.

21  **a.     Claim of Insufficient Time to Review the Plea Agreement**

22         Cholakian's first claim is that his trial counsel was ineffective because Cholakian only

23  had fifteen minutes to consider the plea agreement.   This claim is not credible in light of

24  Cholakian's own statements made at his change of plea proceeding, which show that he was

25  advised by his attorney as to the terms of the agreement.  He informed the court he had read the

26  agreement, discussed it with his attorney and had no questions regarding its provisions.  This

27  advice is confirmed by his statements in the plea agreement itself.   He also advised the court that

28  he was satisfied with his counsel's representation.  These statements are entitled to a "strong

presumption of veracity." <u>Anderson</u>, 993 F.2d at 1438.   Further, the only evidence provided by Cholakian as to the limited time he had to consider the plea agreement before signing it are his own statements in this motion and the statements he made during sentencing proceedings.  This court has already found Cholakian's testimony at the sentencing proceedings regarding material matters not to be credible and that he has been repeatedly untruthful since the time of the change of plea proceeding.  Therefore, this court now finds that Cholakian had sufficient time to read and understand the plea agreement including the factual basis portion and his trial counsel did not deprive him from doing so.  Cholakian has not shown by any credible evidence that trial counsel's review and explanation of the plea agreement with him fell below the objective standard of reasonableness.

Based on the foregoing, the court concludes that this ineffective assistance of counsel claim is without merit, and it will deny the motion as based on such claims..

### b.   Claim that Cholakian Was Advised by His Counsel to Agree to Plead to a Factually Incorrect Factual Basis in the Plea Agreement

Cholakian contends that his trial counsel was ineffective because he advised Cholakian to sign a plea agreement that did not contain an accurate factual recitation of Cholakian's version of his conduct which involved committing the crime alleged in count one.  The substance of Cholakian's claim here, concerning the alleged factual inaccuracy of the "factual basis" portion of the plea agreement, was discussed at length during the sentencing proceedings in this case.  At various times during his proffer sessions and the sentencing, Cholakian took issue with the correctness of the following statements in the plea agreement:  that he had driven the truck;  that he knew there was 6 kilograms of cocaine in the truck at the time he drove and parked it;  that he had served as a look-out while the cocaine transaction occurred at the McDonald's restaurant parking lot;  that he had any prior knowledge of the transaction;  and that he was ever Oganessyan's partner in drug deals.

Cholakian's counsel did in fact state to the court during sentencing that he had advised Cholakian that he should plead guilty to count one even though the factual basis of the plea agreement contained inaccurate information, because the inaccurate factual information was

"immaterial." Assuming Cholakian's counsel did in fact give him this advice and it fell below the

objective standard of reasonableness (the first prong of the *Strickland* test), the court finds that

Cholakian has not shown there is a reasonable probability that the sentencing outcome would

have been different, *i.e.* the court would have found Cholakian met all five criteria of Section

5C1.2, including the fifth criterion of providing not later than the time of sentencing all truthful

information and evidence he had concerning the offense in count one and offenses that were part

of the same conduct or of a common scheme or plan and, based on such finding, sentenced him to

a term of imprisonment less than the mandatory minimum of 10 years.  This court finds, as

already mentioned above, that the factual basis stated in the plea agreement and at the change of

plea proceedings is the most credible version of the criminal events in which Cholakian was

engaged.  Any later inconsistencies by Cholakian in the proffer sessions and at sentencing

regarding the offenses are solely an attempt by him to minimize his role in the offense and were

untruthful.  Therefore, trial counsel's ineffectiveness in advising Cholakian to plead guilty to

count one even though the "factual basis" in the plea agreement was inaccurate was not

prejudicial, and his claim of prejudicial ineffective assistance of trial counsel is rejected.  The

court will deny his motion as based on this contention.

              **c.**        **Claim Regarding Sentencing Position and Cholakian's Declaration**

        Cholakian also contends that his counsel was ineffective because counsel filed a

sentencing position paper which requested a downward adjustment under U.S.S.G. § 3B1.2 of the

Sentencing Guidelines for a minimal role and, in support of that position, he submitted a

December 3, 2002 declaration by Cholakian which conflicted with the version of events in the

factual basis of his plea agreement (hereinafter the "inconsistency causing declaration").

According to Cholakian, his counsel's performance fell below the constitutionally objective

standard of reasonableness in filing that inconsistency causing declaration, because it caused the

government to withdraw its earlier recommendation that the court find Cholakian met the criteria

for safety valve relief.

        The court notes that Cholakian's position throughout his Section 2255 motion is that he

originally misled the court by agreeing to a factual basis in the plea agreement that was untrue

1    and by misrepresenting to the court at his plea colloquy what happened during the cocaine

2    transaction, and that he later told the truth in his inconsistency causing declaration and sentencing

3    position.  However, the court rejected this argument at the final sentencing proceeding, finding

4    that Cholakian had been untruthful in his proffer sessions and when he testified at the sentencing

5    proceeding, and that the more believable and accurate version of events was contained in the

6    factual basis of the plea agreement and at the change of plea proceeding.  In actuality, Cholakian

7    essentially is attempting to lay the blame on his counsel for his own untruthful inconsistency

8    causing declaration.  Regardless of the wisdom of Cholakian's counsel's decision to advocate for

9    a minimal role reduction in his sentencing position paper, it was Cholakian's decision to present

10   an untruthful version of events to the court in his inconsistency causing declaration.  There is no

11   evidence he was compelled to do so by his attorney or anyone else.  He therefore cannot blame

12   such a decision on his counsel.  It was Cholakian's decision that led to the government's

13   withdrawal of its positive safety valve recommendation, not counsel's advocacy for a minimal

14   role reduction.

15          The court concludes that Cholakian has not established from the record that the first prong

16   of the *Strickland* test has been met as to this claim of ineffective assistance of counsel.

17   Consequently, the court finds this claim of ineffective assistance of trial counsel will be denied.

18                    **d.    Claim Regarding Cholakian's Counsel's Performance and
                              Advice After Filing His Sentencing Position Paper**

19

20          Cholakian next contends that, after filing the sentencing position paper, his counsel failed

21   to realize the error he had made when he received the government's supplemental position paper

22   dated December 10, 2002 and did not attempt to "negotiate" a correction of that error with the

23   United States Attorney's Office, and that this failure was objectively unreasonable.  He also

24   contends that his counsel's decision to have Cholakian testify at his sentencing proceedings also

25   fell below the standard of reasonableness required for effective assistance of counsel.  Both

26   claims are without merit.

27          This court has reviewed the transcript of the sentencing hearings that occurred on

28   December 17, 2002, August 11, 2003, August 12, 2003, and August 13, 2003 and, based on that

                                                      14

1  review of the record, concludes that counsel went to great lengths to get Cholakian to comply

2  with the safety valve's fifth criterion that he "truthfully provide [] to the government all

3  information and evidence the defendant has concerning the offense," after Cholakian's

4  inconsistency causing declaration caused the government to withdraw its recommendation that

5  Cholakian met the criteria for safety valve relief.  During the sentencing hearing on December 17,

6  2002 when Cholakian was supposed to be sentenced, his attorney's advocacy resulted in the court

7  delaying sentencing and instead asking the government to provide Cholakian with another

8  opportunity to proffer and satisfy the safety valve criteria.  The government did so, and

9  Cholakian again failed to be completely honest and forthcoming about the cocaine transaction,

10  resulting in the proffer session being terminated.   When the parties returned to court,

11  Cholakian's attorney did everything he could to rectify the situation by requesting that he be

12  allowed to make a third "proffer" before the court.  The court allowed him to do so, and once

13  again, Cholakian's representation of events was inconsistent and contradictory.  Therefore, as

14  discussed above, it was Cholakian's own conduct and statements that resulted in the denial of

15  safety valve relief, despite his counsel's efforts and the opportunities provided to him by the

16  court.

17       Similarly, Cholakian's claim that trial counsel was ineffective by having him testify at the

18  sentencing proceeding runs into the same problem: it was Cholakian's own decision to provide

19  untruthful testimony as a witness and to repeatedly try to minimize his conduct with confusing

20  and contradictory versions of the events that transpired in regard to the offense alleged in count

21  one. There is no evidence Cholakian was compelled to testify by his counsel, and perhaps more

22  importantly once on the witness stand, it was his choice whether to tell the truth or not.

23  Therefore, the prejudice suffered by Cholakian (the denial of safety valve relief) was caused by

24  his own conduct, not by his counsel's performance.  Furthermore, as the government points out,

25  at the time he testified, Cholakian had already provided untruthful comments in his initial proffer

26  session and to this court, in his inconsistency causing declaration attached to his sentencing

27  position.  Thus, his credibility had already been significantly damaged.

28       Based on the foregoing, the court concludes that, as to this claim for ineffective assistance

15

of counsel, Cholakian has presented no evidence that counsel's performance in representing him at the January 14, 2003 proffer session and when he testified at the sentencing proceeding was objectively unreasonable.  This claim concerning ineffective assistance of counsel will be denied.

### e.      Claim Regarding Counsel's Conflict of Interest

Cholakian contends that his attorney had a financial interest in a business in which Cholakian was involved, named Vino Victoria LLC, and that this interest created a conflict of interest whereby his attorney's interests were "better served by Cholakian receiving less time in custody than that which was contemplated by the Plea Agreement."   To prevail on a conflict of interest claim in a Section 2255 motion contending ineffective assistance of counsel, a defendant must show "an actual conflict of interest adversely affected his lawyer's performance."  *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980).  Cholakian's contention of an actual conflict of interest here is not supported by credible evidence.  Also, Cholakian benefitted from his counsel's continued requests for trial continuances, and no evidence has been presented that these requests were designed to benefit his lawyer, to the detriment of Cholakian.  Cholakian also claims that his attorney was motivated to request less custody time for Cholakian because of his financial interest in having Cholakian out of custody to assist in the operation of this business.  Once again, no credible evidence supports this claim.  These assertions are fanciful surmises and post-conviction speculation.

The court concludes that Cholakian has not established that his counsel had an actual conflict of interest which adversely affected his performance in representing Cholakian.  Consequently, Cholakian's claim of ineffective assistance of trial counsel based on a conflict of interest ground will be denied.

### e.      Claim of Counsel Being Under the Influence of Intoxicants Prior to Sentencing

Finally, Cholakian contends that his attorney was intoxicated from taking Nyquil cold medication prior to his sentencing hearing on August 13, 2003.  The evidence he relies upon for this claim is Cholakian's unsworn statement that he had heard from someone else that his

16

1  attorney was asleep outside the courtroom before the hearing.[1]  This claim is not supported by

2  credible evidence.  It is based on unsupported hearsay.  Therefore, the court will not give any

3  weight to his assertions regarding his counsel's purported intoxication.  Consequently, this claim

4  of ineffective assistance of counsel will be denied.

5  **C.  Cholakian's Request for an Evidentiary Hearing**

6  Based on the foregoing discussion, the court concludes that the instant motion and files

7  and records of the criminal case show that Cholakian is entitled to no relief in this action.

8  Accordingly, it will deny his request for an evidentiary hearing.

**III.**
**DISPOSITION**

Accordingly, IT IS ORDERED that:

1) Movant Hagop Cholakian's request for an evidentiary hearing as to the claims in his Section 2255 motion is denied; and

2)  Movant Hagop Cholakian's Section 2255 motion is denied.

ROBERT J. TIMLIN
DATE : 11/25/08          ROBERT J. TIMLIN, DISTRICT COURT JUDGE

---

[1] Cholakian has made no assertion that his trial counsel, in representing him during the sentencing on August 13, 2003, exhibited any signs of being under the influence of any intoxicants.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28